1  E. LEIF REID
   Nevada Bar No. 5750
2  DARREN J. LEMIEUX
   Nevada Bar No. 9615
3  TARA C. ZIMMERMAN
   Nevada Bar No. 12146
4  LEWIS AND ROCA LLP
   50 West Liberty Street, Suite 410
5  Reno, Nevada  89501
   Telephone Number:  (775) 823-2900
6  Fax Number: (775)823-2929
   lreid@lrlaw.com
7  dlemeiux@lrlaw.com
   tzimmerman@lrlaw.com
8
   JOSEPH M. ALIOTO
9  California Bar Number 42680
   ALIOTO LAW FIRM
10 One Sansome Street, 35th Floor
   San Francisco, CA  94104
11 Telephone Number:  (415) 434-8900
   Fax Number:   (415) 434-9200
12 Email:  jmalioto@aliotolaw.com
   (Pro Hac Vice Application Pending)[1]
13
   *Attorneys for Plaintiffs*
14
                  UNITED STATES DISTRICT COURT
15                    DISTRICT OF NEVADA

16 BRIAN L. GREENSPUN, AN INDIVIDUAL; THE
   BRIAN L. GREENSPUN SEPARATE PROPERTY
17 TRUST, DATED JULY 11, 1990; THE AMY
   GREENSPUN ARENSON 2010 LEGACY TRUST,
18
19                PLAINTIFFS,
                                              VERIFIED COMPLAINT
20 VS.                                        (JURY DEMAND)

21 STEPHENS MEDIA LLC, a Nevada limited
   liability company; STEPHENS HOLDING
22 COMPANY OF ARKANSAS, an Arkansas
   corporation; SF HOLDING CORP., an Arkansas
23 foreign corporation, d/b/a STEPHENS MEDIA
   GROUP; DR PARTNERS, a Nevada General
24 Partnership, d/b/a STEPHENS MEDIA GROUP;
   STEPHENS MEDIA INTELLECTUAL PROPERTY,
25 LLC, a Delaware limited liability company;
   MICHAEL FERGUSON, AN INDIVIDUAL; WARREN
26 A. STEPHENS, AN INDIVIDUAL, DOES, I-X,
   INCLUSIVE,
27
                   DEFENDANTS.
28
   _____

[1] Joseph M. Alioto, Esq. has complied with LR IA 10-2.

3682935.2

Lewis and Roca LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501

1    COMES NOW Plaintiffs, Brian L. Greenspun, an individual; Brian L. Greenspun, as

2  trustee of The Brian L. Greenspun Separate Property Trust, dated July 11, 1990; Brian L.

3  Greenspun, as trustee of The Amy Greenspun Arenson 2010 Legacy Trust (collectively,

4  "Plaintiffs"), and complains against Defendants, Stephens Media LLC; Stephens Holding

5  Company of Arkansas, SF Holding Corp., DR Partners d/b/a Stephens Media Group; Stephens

6  Media Intellectual Property LLC; Michael Ferguson, Warren A. Stephens, and Does I-X as

7  follows:

8                                    **JURISDICTION AND VENUE**

9        1.        This action is brought under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §

10  26, to prohibit the consummation and the effectuation of Defendants' termination of the Amended

11  and Restated Agreement ("2005 JOA") with Las Vegas Sun, Inc. in violation Section 2 of the

12  Sherman Act, 15 U.S.C. § 2, Section 7 of the Clayton Act, 15 U.S.C. § 18, and Nevada's Unfair

13  Practice Act, NRS Chapter 598A.  This Court has subject matter jurisdiction of the federal

14  antitrust claims asserted in this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, and

15  Title 28 United States Code Sections 1331 and 1337.  This Court has supplemental jurisdiction

16  over Plaintiffs' claim arising under Nevada's Unfair Trade Practice Act pursuant to 28 U.S.C. §

17  1367.

18        2.        This Court has personal jurisdiction over the Defendants, and each of them,

19  pursuant to NRS 14.065 because the acts and omissions complained of herein were committed, in

20  part, within the State of Nevada, County of Clark, and thus, the Defendants, and each of them,

21  have had sufficient minimum contacts with this forum such that the exercise of personal

22  jurisdiction over them will not offend the traditional notions of fair play and substantial justice.

23        3.        Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22

24  and under 28 U.S.C. § 1391 because the Defendants are each subject to personal jurisdiction in

25  this district; the Defendants reside, are found, have agents, do or transact business in or are

26  otherwise found in this district; and a substantial part of the events giving rise to this action

27  occurred in this district.  The interstate trade and commerce involved and affected by the

28  Defendants' violations of the antitrust laws were carried on within the district and certain of the

1    unlawful acts set forth herein were conceived, performed or made effective within the district, and

2    or had an effect within the district.

3                                    **THE PARTIES**

4        4.      Plaintiff Brian Greenspun is, and at all times material hereto was, a resident and

5    citizen of Clark County, Nevada.

6        5.      Brian Greenspun is a subscriber to the LVRJ/Las Vegas Sun and plans and expects

7    to continue to purchase a newspaper subscription from the LVRJ/Las Vegas Sun in the future.

8        6.      Plaintiff The Brian L. Greenspun Separate Property Trust dated July 11, 1990 (the

9    "BLG Trust") is, and at all times material hereto was, an entity created and existing under Nevada

10   law.  Brian Greenspun is its Trustee.

11       7.      Plaintiff The Amy Greenspun Arenson 2010 Legacy Trust (the "AGA 2010 Legacy

12   Trust") is, and at all times material hereto was, an entity created and existing under Nevada law.

13   Brian Greenspun is its Trustee.

14       8.      Plaintiffs, the BLG Trust and AGA Legacy Trust, are minority shareholders of Las

15   Vegas Sun, Inc.

16       9.      Unless otherwise indicated, Brian Greenspun, the BLG Trust, the AGA 2010

17   Legacy Trust are collectively referred to as "Plaintiffs."

18       10.     Stephens Media LLC is and at all times material hereto was a Nevada Limited

19   liability company having its principal place of business in Clark County, Nevada.

20       11.     Stephens Holding Company of Arkansas is and at all times material hereto was a an

21   Arkansas corporation doing business in in Clark County, Nevada.

22       12.     Upon information and belief, SF Holding Corp. is and at all times material hereto

23   was an Arkansas corporation doing business as Stephens Media Group in Clark County, Nevada

24       13.     DR Partners d/b/a Stephens Media Group is and at all times material hereto was a

25   Nevada general partnership having its principal place of business in Clark County, Nevada.

26       14.     Stephens Media Intellectual Property, LLC is and at all times material hereto was a

27   Delaware limited liability company doing business in in Clark County, Nevada.

28   / / /

Lewis and Roca LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501

3682935.2

15. Michael Ferguson is and at all times material hereto was an individual residing and doing business in Clark County, Nevada.

16. Warren A. Stephens is and at all times material hereto was an individually residing in Arkansas and doing business in Clark County, Nevada.

17. Unless otherwise indicated, Defendants Stephens Media LLC, Stephens Holding Company of Arkansas, SF Holding Corp., DR Partners, d/b/a Stephens Media Group, Stephens Media Intellectual Property, LLC, Michael Ferguson, and Warren A. Stephens are collectively referred to as "Stephens Media."

18. Plaintiffs allege that the defendants named herein as Does I through X are individuals, corporations, limited liability companies, partnerships, associations or other persons or entities who are responsible in some manner or capacity for the acts alleged herein, but whose names are unknown to Plaintiffs at this time. Plaintiffs will seek leave to amend this Complaint to include the names of DOES I through X when the identities of such defendants become known to Plaintiffs.

## GENERAL ALLEGATIONS

### Summary of Complaint

19. This is an action for equitable and injunctive relief based on Plaintiffs' antitrust claims initiated in connection with the Newspaper Preservation Act, 15 U.S.C. § 1801, *et seq.* and brought pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 7 of the Clayton Act, 15 U.S.C. § 18, Section 16 of the Clayton Act, 15 U.S.C. § 26, and Section 598A.060 and 598A.210 of the Nevada Unfair Trade Practice Act (NRS 598 *et seq.*).

### *The Las Vegas Sun, Inc.*

20. Hank Greenspun founded the Las Vegas Sun in 1950. The Las Vegas Sun publishes a newspaper for circulation in the Las Vegas metropolitan area.

21. The Las Vegas Sun and its sister publications currently employ approximately 200 individuals.

/ / /

/ / /

22.     The Las Vegas Sun is an alternative editorial voice for the Las Vegas metropolitan area, often expressing differing or competing views and values than the Las Vegas Review Journal ("LVRJ")—the Las Vegas Sun's largest competitor.

23.     The Las Vegas Sun has won numerous awards, including the Pulitzer Prize, for its outstanding journalism.

24.     The Las Vegas Sun maintains Greenspun Interactive, which is devoted to maintaining the Las Vegas Sun's website, available at www.lasvegassun.com, which has also won numerous awards, including one of the most prestigious broadcast journalism awards available, the DuPont Award.

25.     The Las Vegas Sun was the first newspaper ever to be awarded the DuPont Award.

26.     The Las Vegas Sun gives credibility and provides enormous intangible value to the Greenspun Media Group and the Greenspun family.

27.     Though each entity is separate and offers a different product or service, without the Las Vegas Sun and lasvegassun.com, the remaining parts of the Greenspun Media Group could not function and succeed in the long-term.

28.     The Las Vegas Sun is presently owned by Plaintiffs, the BLG Trust and AGA Legacy Trust, as well as The Susan Greenspun Fine Family Trust, dated November 20, 1990 (the "SGF Trust"), The Daniel A. Greenspun Separate Property Trust, dated April 15, 1990 (the "DAG Trust"), The Jane Greenspun Gale Separate Property Trust, dated November 19, 1990 (the "JGG Trust"), The James Adam Greenspun 2010 Legacy Trust (the "JAG 2010 Legacy Trust"), Moira Greenspun Tarmy 2010 Legacy Trust (the "MGT 2010 Legacy Trust"), Jesse Greenspun Gale 2010 Legacy Trust (the "JGG 2010 Legacy Trust"), The Ariel Greenspun Gale 2010 Legacy Trust (the "AGG 2010 Legacy Trust"), The Harrison Lucas Gale 2010 Legacy Trust (the "HLG 2010 Legacy Trust"), The Jeffrey Aron Fine 2010 Legacy Trust (the "JAF 2010 Legacy Trust"), The Alyson Fine Marmur 2010 Legacy Trust (the "AFM 2010 Legacy Trust"), The Jonathon M. Fine 2010 Legacy Trust (the "JMF 2010 Legacy Trust", and The Kathryn A. Fine 2010 Legacy Trust (the "KAF 2010 Legacy Trust").

29.     Danny Greenspun is the Trustee of the DAG Trust.

Lewis and Roca LLP
40 West Liberty Street, Suite 410
Reno, Nevada 89501

3682935.2

30.     Jane Greenspun Gale is the Trustee of the JGG Trust.

31.     Upon information and belief, Susan Greenspun Fine is the Trustee of the SGF Trust.

32.     Steven M. Gluckstern is the Trustee of the JAG 2010 Legacy Trust and the MGT 2010 Legacy Trust.

33.     Jane Greenspun Gale is the Trustee of the JGG 2010 Legacy Trust, the AGG 2010 Legacy Trust, and the HLG 2010 Legacy Trust.

34.     Upon information and belief, Susan Greenspun Fine and/or Mark Fine are the Trustees of the JAF 2010 Legacy Trust, the AFM 2010 Legacy Trust, the JMF 2010 Legacy Trust, and the KAF 2010 Legacy Trust.

35.     Unless otherwise indicated, Plaintiff the BLG Trust, and the SGF Trust, the DAG Trust, and JGG Trust, are collectively referred to as the "Second Generation Trusts."

36.     Unless otherwise indicated, Plaintiff the AGA 2010 Legacy Trust, and the JAG 2010 Legacy Trust, the MGT 2010 Legacy Trust, the JGG 2010 Legacy Trust, the AGG 2010 Legacy Trust, the HLG 2010 Legacy Trust, the JAF 2010 Legacy Trust, the AFM 2010 Legacy Trust, the JMF 2010 Legacy Trust, and the KAF 2010 Legacy Trust, are collectively referred to as the "Third Generation Trusts."

37.     Susan Greenspun Fine, Brian Greenspun, Jane Greenspun Gale, Danny Greenspun and Paul Hamilton serve as Directors of the Las Vegas Sun.

*Vegas.com, LLC*

38.     Vegas.com is owned by the Third Generation Trusts.

39.     Steven M. Gluckstern, Jim Gibson, Steven MacArthur, Danny Greenspun, Jeffrey Fine, Walter Delph, Jeffrey Gale, and Josh Schwartz are managers of Vegas.com.

40.     Vegas.com is devoted to the operation of the website www.vegas.com, which is a transactional website that offers information and access to travel, lodging, dining, and entertainment in Las Vegas.

/ / /

/ / /

*Las Vegas Review Journal*

41.   Upon information and belief, Stephens Media LLC is the owner and publisher of the LVRJ in Las Vegas, Nevada.

42.   Stephens Media LLC is managed by Stephens Holding Company and SF Holding Corp.

43.   Upon information and belief, SF Holding Corp. and/or Stephens Media LLC is the current holder of the trade name "Stephens Media Group" and conducts business in Nevada under that trade name.

44.   Upon information and belief, Stephens Media LLC is the successor in interest to DR Partners, which in turn is the successor in interest to Donrey of Nevada, Inc.

45.   Upon information and belief, Michael Ferguson is the President and Chief Executive Officer of Stephens Media LLC, and oversees the operations of the LVRJ and has authority to enter into agreements on behalf of the LVRJ and Stephens Media LLC.

46.   Warren A. Stephens is the President of Stephens Holding Company and SF Holding Corp.

**The Joint Operating Agreement and License Agreement**

47.   In 1989, pursuant to the Newspaper Preservation Act of 1970, Brian Greenspun, acting on behalf of the Las Vegas Sun, Inc. and with the authority of Hank Greenspun, the Las Vegas Sun's publisher, negotiated a joint operating agreement (the "1989 JOA") with the Donrey of Nevada, Inc. because the Las Vegas Sun was routinely unprofitable and operated at a substantial loss.  Under the 1989 JOA, the LVRJ was required to, among other things, print the Las Vegas Sun and handle all advertising and circulation functions for both print newspapers, thereby eliminating significant expenses to the Las Vegas Sun.  Since entering into the JOA in 1989, the Las Vegas Sun, Inc. has had no control over revenue generated by the Las Vegas Sun.

48.   The 1989 JOA ensured that the Las Vegas Sun would be in existence until at least 2040.

49.   As a direct result of the 1989 JOA, the Las Vegas Sun became profitable.

/ / /

Lewis and Roca LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501

3682935.2

50.     In 2005, Brian Greenspun renegotiated the 1989 JOA with Defendant DR Partners resulting in the execution of an Amended and Restated Agreement ("2005 JOA").

51.     Under the 2005 JOA, the LVRJ agreed to continue to produce and promote the Las Vegas Sun.  Specifically, the LVRJ agreed print both the LVRJ and the Las Vegas Sun together in its facilities and to bear all costs, including capital expenditures, of operations, except the operation of the Las Vegas Sun's news and editorial department.  As a result of the 2005 JOA, the Las Vegas Sun became even more profitable.

52.     The Las Vegas Sun does not own, operate, or have access to a separate printing facility or printing equipment.  The Las Vegas Sun and the LVRJ are required to "bear their own respective editorial costs" and "to maintain a staff of news and editorial employees."  However, the 2005 JOA provides that the "Sun shall receive an annual profits payment ("the Annual Profits Payment"), of one-twelfth (1/12th) of which shall be paid monthly in advance of the first day of each month during the term."  This payment is the Las Vegas Sun, Inc.'s sole source of revenue production, and is used to set its annual budget and to pay for its expenses.  The Annual Profits Payment is also used to fund the operations of the lasvegassun.com website.   The Annual Profits Payment adjusts annually; presently the Las Vegas Sun's Annual Profits Payment is approximately $1,300,000.00.

53.     The initial term of the 2005 JOA expires on December 31, 2040, at which point it automatically renews for succeeding periods of ten years unless either party terminates it upon the occurrence of one the delineated events of termination.  Specifically, there are three delineated events of termination set forth in the 2005 JOA: (1) the expiration of the term set forth in Section 1.2; (2) bankruptcy or default by either party; and (3) a change in the controlling ownership interest in the Las Vegas Sun away from any lineal descendants of Hank Greenspun without prior approval from the LVRJ.

54.     Simultaneous to the execution of the 2005 JOA, Defendants Stephens Media Intellectual Property, LLC and DR Partners d/b/a Stephens Media Group, entered into a Mark and Domain Name License Agreement with Vegas.com, Greenspun Media Group, LLC ("GMG"), and the Las Vegas Sun ("License Agreement").  Pursuant to the License Agreement, Stephens Media

1   Intellectual Property, LLC granted Vegas.com and GMG, as Licensee, the right to use the Uniform

2   Resource Locator ("URL") associated with lasvegas.com in exchange for a one-time payment of

3   $12,000,000.00 and monthly payments ranging between $83,000.00 and $208,000.00 through

4   June 30, 2040, at which point Stephens Media would transfer the Domain Name to Licensee

5   without further payment.

6   **Nature of Trade and Commerce – Relevant Product and Geographic Markets**

7   55.     For over 60 years, the citizens of Las Vegas have enjoyed the benefits of two local

8   newspapers.  In 1989, the owners of the Las Vegas Sun and the LVRJ eliminated some - but not

9   all - elements of competition between the two newspaper owners by forming the initial joint

10  operating agreement, which was later amended in 2005.  Under the 2005 JOA, the two newspapers

11  coordinated certain financial and operational aspects of producing the two newspapers -

12  principally, the printing, distribution, and sales of subscriptions and advertisements.  Importantly,

13  however, the two newspapers did not combine all of their operations or ownership.  The two

14  newspapers have always maintained separate ownership of and independently made decisions

15  regarding the content and style of the Las Vegas Sun and the LVRJ that determined the

16  attractiveness and worth of the paper to readers.  The attractiveness to readers of each paper

17  directly affected the value of the separate ownership interest of each company.

18  56.     Local newspapers, such as the Las Vegas Sun and the LVRJ, provide a unique

19  package of attributes for their readers. They provide national, state, and local news in a timely

20  manner and in a convenient, hardcopy format.  The news stories featured in such newspapers are

21  more detailed, when compared to the news reported by radio or television, and they cover a wide

22  range of topics of interest to local readers, not just major news highlights. Newspapers, such as the

23  Las Vegas Sun and the LVRJ, are portable and allow the reader to read the news, advertisements,

24  and other information at his or her own convenience.  They also provide a tangible historical

25  record of news and events.  Most readers of local newspapers in the Las Vegas area do not

26  consider radio news, or television news to be adequate substitutes for the two local newspapers

27  serving the Las Vegas area.

28  / / /

Lewis and Roca LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501

3682935.2

57.     Unlike radio and television, however, for many readers, online newspaper websites are considered adequate substitutions for printed newspapers.  In fact, given consumers' increased reliance on technology in their everyday lives, the traditional printed newspaper has struggled in recent years and sales have dropped throughout the printed newspaper industry.  Newspaper websites will be the likely successor to the traditional printed newspaper.  Accordingly, print newspapers, including the Las Vegas Sun, have begun focusing substantial time and effort on their websites and have become increasingly more reliant on their websites for the dissemination of opinions and news.

58.     The operations for the Las Vegas Sun's printed newspaper and website are highly intertwined and dependent on one another.  The printed newspaper and website utilize the same newsroom and staff for their respective reporting and editing.  Many of the stories published in the Las Vegas Sun print newspaper were first reported in their earlier stages on the lasvegassun.com.

59.     Accordingly, the sale of local newspapers to readers, and the interrelated operation of a newspaper website, constitutes a line of commerce and a relevant product market for purposes of Section 7 of the Clayton Act and Section 2 of the Sherman Act.

60.     The Las Vegas Sun and the LVRJ are both produced, published, and distributed to readers in the Las Vegas, Clark County, Nevada area.  Both newspapers and their respective websites provide news relating to the Las Vegas area in addition to state and national news.

61.     Local newspapers or newspaper websites that serve areas outside of the Las Vegas area do not regularly provide local news specific to the Las Vegas area.  From a reader's standpoint, local newspapers and newspaper websites serving areas outside of the Las Vegas area are not acceptable substitutes for the Las Vegas Sun and the LVRJ.  For this reason, local newspapers outside of the Las Vegas area do not have any significant circulation or sales in Las Vegas.

62.     Accordingly, the Las Vegas, Nevada area is a section of the country and a relevant geographic market for purposes of Section 7 of the Clayton Act and Section 2 of the Sherman Act.

/ / /

/ / /

**Defendants' Conduct Giving Rise to Violations of Law – Request that 2005 JOA be Terminated**

63.     On June 23, 2013, the Stephens Media Defendants made a written offer to the Las Vegas Sun, Inc. concerning the termination of the 2005 JOA "as of September 1, 2013." In exchange for terminating the 2005 JOA and acquiring the URL lasvegassun.com, Stephens Media Intellectual Property, LLC (i.e., LVRJ) would terminate the License Agreement and transfer ownership of the URL lasvegas.com to the Greenspun Corporation and/or Vegas.com. As part of the offer, Stephens Media also requested that Susan Fine, Janie Gale, Danny Greenspun, and Brian Greenspun enter into a five-year non-compete agreement, in which each sibling would be paid $25,000.00 for refraining from engaging in the "local news business (either print or on-line)" for five years.

64.     On or about July 15, 2013, Paul Hamilton, on behalf of Susan Fine, Danny Greenspun and Janie Gale, responded via email to Stephens Media's offer by indicating that

> A controlling majority of the Greenspun entities would be interested in terminating the June 2005 Amended and Restated Joint Operating Agreement and in return require the termination of the lease/licen [sic] agreement for the lasvegas.com URL and its ownership transfer to the Greenspun Corporation.

(original formatting removed).

65.     In response, on or about June 22, 2013, Stephens Media indicated that "[t]his is a transaction that Stephens Media would accept and approve and move to accomplish with a minimum of delay."

66.     On or about July 26, 2013, Brian Greenspun received notice of a special meeting of the board of directors of the Las Vegas Sun scheduled for August 8, 2013. The meeting was subsequently changed to August 7, 2013. Attached to the notice was the meeting's agenda. Sections 6 and 7 of the agenda read "DISCUSSION REGARDING SALE / TRANSFER OF JOA WITH STEPHENS," and "DISCUSSION OF SALE OF URL (lasvegassun.com) TO STEPHENS OR THIRD PARTY," respectively.

67.     Similarly, on or about July 26, 2013, Brian Greenspun received notice of special meeting of the board of directors of the Greenspun Corporation scheduled for August 8, 2013.

Lewis and Roca LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501

-11-

3682935.2

1   The meeting was subsequently moved to August 7, 2013.  Attached to the notice was the

2   meeting's agenda.  Section 6 of the agenda read "DISCUSSION AND [sic] REGARDING

3   STEPHENS' OFFER RE: CANCELLATION OF URL LICENSE AGREEMENT (lasvegas.com)

4   AND ACQUISITION OF URL."

5        68.      Finally, on or about July 26, 2013, Brian Greenspun, as trustee of the Plaintiff

6   Trusts, received notice of a special stockholders meeting of the Las Vegas Sun, Inc. scheduled for

7   August 8, 2013.  The meeting was subsequently moved to August 7, 2013.

8        69.      The Greenspun Corporation and the Las Vegas Sun, Inc. special meetings of

9   directors and the special meeting of the stockholders of the Las Vegas Sun, Inc. were held on

10  August 7, 2013.  During the special meeting of the directors of the Greenspun Corporation, a

11  majority of the directors voted to accept Stephens Media Intellectual Property, LLC's (i.e., LVRJ)

12  offer to terminate the License Agreement for the lasvegas.com (i.e., Vegas.com) URL.  As part of

13  the transaction, Stephens Media will transfer ownership of the lasvegas.com URL to the

14  Greenspun Corporation.  Brian Greenspun voted against the transaction.

15       70.      During the special meeting of directors of the Las Vegas Sun, a majority of the

16  directors voted to terminate the 2005 JOA with Stephens Media (i.e., LVRJ).  The sole

17  consideration for terminating the 2005 JOA was Stephens Media's termination of the License

18  Agreement and transfer of lasvegas.com URL to the Greenspun Corporation and/or Vegas.com.

19  Brian Greenspun voted against the transaction.

20       71.      Also during the August 7, 2013 special meeting of the directors of the Las Vegas

21  Sun, Danny Greenspun, Susan Greenspun Fine and Jane Greenspun Gale voted in favor of

22  instructing Paul Hamilton to execute a Notice of Intent, or other similar non-binding agreement,

23  with Stephens Media prior to August 19, 2013, or within a reasonable amount of time, concerning

24  the termination of the 2005 JOA and cancellation of the lasvegas.com License Agreement.  Paul

25  Hamilton was instructed to proceed thereafter with the execution of a binding agreement.

26       72.      During the special meeting of the Las Vegas Sun Inc.'s stockholders, Danny

27  Greenspun, Susan Greenspun Fine, Jane Greenspun Gale and Steven Gluckstern, as trustees of the

28  Greenspun Family Second Generation Trusts and Greenspun Family Third Generation Trusts,

voted to approve and ratify the actions, resolutions, and motions taken by the Las Vegas Sun, Inc.'s board of directors during the special meeting held on August 7, 2013.   Brian Greenspun, as trustee of the Plaintiff Trusts, voted against approval and ratification.

73.     Upon information and belief, on or about August 18, 2013, Stephens Media LLC and Stephens Media Intellectual Property, LLC delivered to the Las Vegas Sun, Inc. and Vegas.com, through Province Advisors, a Letter of Intent concerning the termination of the 2005 JOA and cancellation of the License Agreement.

74.     As consideration for the termination of the 2005 JOA, Stephens Media agreed to pay the Las Vegas Sun, Inc. $10.00 (ten dollars).

75.     Additionally, as part of the overall agreement to cancel the License Agreement and terminate the 2005 JOA, Stephens Media agreed to pay Brian L. Greenspun, Daniel Greenspun, Jane Greenspun Gale, and Susan Greenspun Fine $70,000.00 each.

**Termination of the 2005 JOA Violates State and Federal Antitrust Laws**

76.     Congress, in 1970, seeking to preserve the ability of independent newspapers to reduce operating expenses through JOAs, gave JOA arrangements created in accordance with federal law explicit, but limited, antitrust immunity when it passed the Newspaper Preservation Act, 15 U.S.C. § 1801, et seq., as long as they met certain requirements.   To receive that immunity, Congress required, inter alia, that the newspapers in a JOA be separately owned or controlled, that they maintain separate newsroom staffs, that their editorial policies be "independently determined," and that at the time the JOA was entered into, no more than one newspaper in the JOA "was likely to remain or become a financially sound publication ...."

77.     Within the 2005 JOA, each company shares profits in accordance with a specified calculation, with the amount being paid to the Las Vegas Sun adjusting annually.   However, each company had an independent economic incentive to increase the value of its respective newspaper ownership interest by attracting readers to that newspaper.   In general, a newspaper that invests in increasing its quality and its appeal will attract more readers and advertisers, will have a longer lifespan, will have an increased market value, and importantly, will see increased activity on its website.   Maintaining or increasing the value of a newspaper within a JOA can affect the outcome

1   of, among other things, renegotiations of the terms or renewal of a JOA, negotiations over one or

2   both JOA newspapers operating outside a JOA, and the identity and viability of the newspapers

3   following the expiration or termination of a JOA.  Thus, the owners of the Las Vegas newspapers

4   had a variety of long and short-term economic incentives to compete to attract readers to their

5   respective newspapers.

6        78.    The owners of the Las Vegas Sun and the LVRJ have always competed vigorously

7   against each other for readers.  They did so in various ways, such as seeking to generate original

8   news and other content of interest to readers; trying to cover local news with greater depth,

9   breadth and accuracy; breaking stories first; and offering the most attractive mix of news, features

10  and editorials to readers.  All of these decisions were outside the cooperation authorized under the

11  JOA.  This head to-head competition between the owners of the Las Vegas Sun and the LVRJ

12  benefits readers by giving them a choice between two newspapers and two newspaper websites

13  with unique news and other content.

14       79.    The LVRJ and Las Vegas Sun also compete for online advertisers for their

15  respective websites.

16       80.    Absent outside influences, neither the Las Vegas Sun nor the LVRJ is in danger of

17  failing in the near future.

18       81.    The terms surrounding Stephens Media's desire to terminate the 2005 JOA

19  contemplate that the Las Vegas Sun will cease operations as both a print and online newspaper.

20       82.    As part of its original June 23, 2013 offer, Stephens Media requested that it receive

21  the rights to the lasvegassun.com URL.  While the counteroffer relayed by Paul Hamilton on July

22  15, 2013 was silent as to the transfer of the lasvegssun.com URL, the ensuing notice for special

23  meeting of the directors of the Las Vegas Sun, Inc. included on its agenda as item 7

24  "DISCUSSION OF SALE OF URL (lasvegassun.com) TO STEPHENS OR THIRD PARTY."

25       83.    In the event the Defendants intend that the lasvegassun.com URL is to be

26  transferred to them, the Las Vegas Sun will lose its ability to compete with the LVRJ via

27  electronic dissemination of its ideas and news.

28     / / /

84.     Moreover, as part of this termination agreement, Stephens Media will give each of the Greenspun Siblings $25,000 in exchange for the Siblings executing a five year non-compete requiring that none of the Greenspun Siblings engage in the "local news business (either print of on-line)."

85.     As the directors of the Las Vegas Sun, Inc., it would be a violation of the non-compete agreement for any of the Greenspun Siblings to continue to operate the Las Vegas Sun by producing a newspaper or disseminating news online.  Accordingly, even if a transfer of the lasvegassun.com URL is not intended to be part of the agreement to terminate the 2005 JOA, the Greenspun Siblings will be prohibited from utilizing the website to compete with the LVRJ.

86.     The presence of the non-compete clause illustrates that the closure of the Las Vegas Sun and its website is integral to Stephens Media's desire to terminate the 2005 JOA.

87.     Even if closing down the Las Vegas Sun is not expressly contemplated, the termination of the 2005 JOA will effectively destroy the Las Vegas Sun and its website by leaving it with no infrastructure or facilities within which to produce, print, edit or operate its newspaper or website.  The funds received under the 2005 JOA are used to operate the Las Vegas Sun print newspaper and the lasvegassun.com website, without which each will be forced to close.

88.     In exchange for terminating the 2005 JOA, the Las Vegas Sun will receive just $10.00 as consideration.  The only other consideration contemplated for the termination of the 2005 JOA is the Greenspun Corporation's and/or Vegas.com's independent acquisition of the lasvegas.com URL and payment of $70,000 each directly to Brian Greenspun, Jane Greenspun Gale, Danny Greenspun and Susan Greenspun Fine.  On the other hand, the Las Vegas Sun will be forfeiting its entire interest in the JOA, including its entitlement to its Annual Profits Payment for the next 27 years.

89.     Because the termination of the 2005 JOA is part of a plan to terminate the publication of one of the two newspapers, the termination of the 2005 JOA is not immune from antitrust scrutiny under the Newspaper Preservation Act, 15 U.S.C. § 1801, et seq.  The Newspaper Preservation Act permits JOAs to be used to coordinate many of the commercial activities of otherwise independent newspapers, including the prices the newspapers charge for

1   subscriptions and advertising, but only if the participants meet the Act's requirements by, inter

2   alia, preserving the existence of two newspapers with independent editorial and reportorial

3   operations.

4       90.     Without the benefit of antitrust immunity, Stephens Media's desire to terminate the

5   2005 JOA violates state and federal antitrust laws.  The effect of the termination of the 2005 JOA

6   may be to substantially lessen competition, or tend to create a monopoly in print and online

7   newspaper industry in Las Vegas in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2,

8   Section 7 of the Clayton Act, 15 U.S.C. § 18, and Nevada's Unfair Practice Act, NRS Chapter

9   598A.

10      91.     The Las Vegas Sun and the LVRJ are the only two newspapers and operate the

11  only two newspaper websites in the Las Vegas area.  By eliminating the LVRJ's only competitor,

12  the termination of the 2005 JOA eliminates the economic incentives that previously had existed

13  for each newspaper to increase the attractiveness of its newspaper to readers in the Las Vegas area.

14  This threatened reduction in competition violates Section 2 of the Sherman Act, 15 U.S.C. § 2,

15  Section 7 of the Clayton Act, 15 U.S.C. § 18, and Nevada's Unfair Practice Act, NRS Chapter

16  598A.

17      92.     The termination of the 2005 JOA will substantially lessen competition in the local

18  newspaper market in the Las Vegas, Nevada area by giving the LVRJ a monopoly in the Las

19  Vegas local newspaper and newspaper website market.  The termination of the 2005 JOA, and

20  impending closure of the Las Vegas Sun and its website, will have adverse effects on competition

21  by, among other things, reducing output (both quantity and quality) of newspapers, increasing

22  subscriber's costs to purchase a newspaper, and reducing the opportunities available for online

23  advertisers.

24      93.     Entry by local newspapers into the Las Vegas, Nevada, area is time-consuming and

25  difficult, and is not likely to prevent the anticompetitive effects of the termination of the 2005

26  JOA.  Local newspapers incur significant fixed costs, many of which are sunk.  Examples of these

27  sunk costs include building or gaining access to a printing facility, establishing a distribution

28  network, hiring reporters and editors, news gathering, and marketing the very existence of the new

1   paper, all of which take substantial time.  These costs often are termed "first copy" costs because

2   they are costs that newspaper companies must incur before they print the first copies of their

3   newspapers.  In the event that the entrant fails or exits the newspaper industry, it cannot recover all

4   of these costs, making entry risky and likely unprofitable.  As a result, entry into Las Vegas

5   newspaper market would not be timely, likely, or sufficient to prevent the harm to competition

6   resulting from the termination of the 2005 JOA and impending closure of the Las Vegas Sun.

7   94.   Additionally, although the Greenspun family has a long legacy of involvement in

8   the Las Vegas news media, by preventing the Greenspun Siblings - specifically Brian Greenspun -

9   from competing with the LVRJ, the Defendants are acting to ensure that the LVRJ will be the sole

10  newspaper in the Las Vegas market for the foreseeable, if not indefinite, future.

## FIRST CAUSE OF ACTION
### (Violation of Section 7 of the Clayton Act – 15 U.S.C. § 18)

13  95.   Plaintiffs reallege and incorporate by reference the averments contained in

14  Paragraphs 1 through 91, inclusive, as though fully set forth herein.

15  96.   The conduct of Defendants described hereinabove, specifically their plan to

16  terminate the 2005 JOA, constitutes a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in

17  that the effect of the proposed termination may be substantially to lessen competition, or to tend to

18  create a monopoly in the print and online newspaper industry in Las Vegas Nevada; by reason of

19  which violation the Plaintiffs are threatened with irreparable harm for which damages will be

20  inadequate to compensate Plaintiffs, such that Plaintiffs are entitled to bring suit under Section 16

21  of the Clayton Act, 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief against

22  Defendants' termination of the 2005 JOA, and to recover their cost of suit, including a reasonable

23  attorney's fee.

## SECOND CAUSE OF ACTION
### (Attempt to Monopolize – 15 U.S.C. § 2)

25  97.   Plaintiffs reallege and incorporate by reference the averments contained in

26  Paragraphs 1 through 93, inclusive, as though fully set forth herein.

27  98.   Defendants have engaged in anticompetitive conduct in an attempt to create a

28  monopoly in the relevant market.

99.     Defendants have acted with specific intent to create a monopoly in the relevant market by forcing the Las Vegas Sun to cease operations.

100.     Given the difficulty of entry into the newspaper business, the Las Vegas's Sun's inability to continue as a going concern after the termination of the 2005 JOA, and the Greenspun Sibling's inability to compete with the LVRJ, there is a dangerous probability that, unless restrained, the LVRJ will achieve monopoly power in the relevant market.

101.     Defendants' conduct has had anticompetitive effects in the relevant market, including those described above.

102.     Plaintiffs have been injured by Defendants' unlawful actions and are entitled to bring suit under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief against Defendants' termination of the 2005 JOA, and to recover their cost of suit, including a reasonable attorney's fee.

**THIRD CAUSE OF ACTION**
**(Nevada Unfair Trade Practices Act – NRS 598A.060)**

103.     Plaintiffs reallege and incorporate by reference the averments contained in Paragraphs 1 through 99, inclusive, as though fully set forth herein.

104.     Defendants have engaged in anticompetitive conduct in an attempt to create a monopoly in the relevant market in violation of Nev. Rev. Stat. § 598A.060.  Given the difficulty in entry into the newspaper business, the Las Vegas's Sun's inability to continue as a going concern after the termination of the 2005 JOA, and the Greenspun Sibling's inability to compete with the LVRJ, there is a dangerous probability that, unless restrained, the LVRJ will achieve monopoly power in the relevant market. Defendants' conduct has had anticompetitive effects in the relevant market, including those described above.

105.     Plaintiffs have been injured by Defendants' unlawful actions and are entitled to bring suit under NRS 598A.210 to obtain preliminary and permanent injunctive relief against Defendants' termination of the 2005 JOA, and to recover their cost of suit, including a reasonable attorney's fee.

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand the following relief from this Honorable Court:

A.      Declaring, finding, adjudging, and decreeing that the Defendants plan to terminate the 2005 JOA violates the Newspaper Preservation Act of 1970, Sherman Act, Clayton Act, and/or Nevada's Unfair Trade Practice Act;

B.      Preliminarily enjoining the Defendants from consummating the termination the 2005 JOA during the pendency of this action.

C.      Permanently enjoining the Defendants from the termination the 2005 JOA.

D.      Awarding to Plaintiffs their cost of suit, including a reasonable attorney's fees, as provided by Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, and NRS 598A.210.

E.      Granting to Plaintiffs such other and further relief to which they may be entitled and which the Court finds to be just and appropriate.

DATED this _____ day of August, 2013.

LEWIS AND ROCA LLP

BY: _____
E. LEIF REID,
DARREN J. LEMIEUX,
TARA C. ZIMMERMAN
50 West Liberty Street, Suite 410
Reno, Nevada  89501

JOSEPH M. ALIOTO
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104

*Attorneys for Plaintiffs*

**VERIFICATION**

I, Brian L. Greenspun, as an individual and trustee of The Brian L. Greenspun Separate Property Trust, dated July 11, 1990, and The Amy Greenspun Arenson 2010 Legacy Trust, hereby verify that I have authorized the filing of this Verified Complaint, that I have reviewed its contents, and that the facts set forth therein are true and correct to the best of my knowledge, information and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED this _20th_ day of August, 2013.

Brian L. Greenspun