JOSEPH M. ALIOTO
California Bar Number 42680
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone Number: (415) 434-8900
Fax Number: (415) 434-9200
Email: jmalioto@aliotolaw.com
(*Pro Hac Vice* Application To Be Filed)

E. LEIF REID,
Nevada Bar No. 5750
DARREN J. LEMIEUX,
Nevada Bar No. 9615
TARA C. ZIMMERMAN,
Nevada Bar No. 12146
LEWIS ROCA ROTHGERBER LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone Number: (775) 823-2900
Fax Number: (775)823-2929
lreid@lrrlaw.com
dlemeiux@lrrlaw.com
tzimmerman@lrrlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN L. GREENSPUN, an individual; THE BRIAN L. GREENSPUN SEPARATE PROPERTY TRUST, DATED JULY 11, 1990; THE AMY GREENSPUN ARENSON 2010 LEGACY TRUST,<br><br>PLAINTIFFS,<br><br>VS.<br><br>STEPHENS MEDIA LLC, a Nevada limited liability company; STEPHENS HOLDING COMPANY OF ARKANSAS, an Arkansas corporation; SF HOLDING CORP., an Arkansas foreign corporation, d/b/a STEPHENS MEDIA GROUP; DR PARTNERS, a Nevada General Partnership, d/b/a STEPHENS MEDIA GROUP; STEPHENS MEDIA INTELLECTUAL PROPERTY, LLC, a Delaware limited liability company; MICHAEL FERGUSON, an individual; WARREN A. STEPHENS, an individual, DOES, I-X, inclusive,<br><br>DEFENDANTS. | Case No. 2:13-cv-01494-JCM-PAL<br><br>**PLAINTIFF BRIAN L. GREENSPUN'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION, TO ESTABLISH A HEARING AND BRIEFING SCHEDULE, AND TO PERMIT EXPEDITED DISCOVERY** |

Plaintiff, Brian L. Greenspun, through his attorneys of record, hereby respectfully moves the Court for entry of an emergency order:

1. Temporarily and preliminarily enjoining and restraining Defendants including without limitation, all of their respective managing members, officers, agents, servants, employees, and all other persons acting in concert or participation with any of them from:

    i. Taking any steps whatsoever to terminate the Amended and Restated Agreement ("2005 JOA"), including, but not limited to, negotiating or entering into the Transaction Documents contemplated in the September 10, 2013 Letter of Intent.

    ii. From taking any steps whatsoever that are contrary to, or inconsistent with, the various provisions of the 2005 JOA, including, without limitation, the right of the Las Vegas Sun to produce and furnish features, news and editorial copy, and like material, to the Las Vegas Review Journal for publication in the Sun and the requirement that Las Vegas Review Journal produce the Las Vegas Sun as a morning newspaper and to sell advertising for, promote and circulate the Las Vegas Sun.

    iii. From taking any actions whatsoever that may cause any material adverse change in the business, including loss of financial condition of the Las Vegas Sun as a viable going concern.

2. Setting a hearing on Plaintiff's motion for preliminary injunction.

3. Setting a deadline for Defendants to file and serve their opposition to Plaintiff's motion for preliminary injunction.

4. Setting a deadline for Plaintiff to file and serve his reply memorandum in support of their motion for preliminary injunction.

5. Permitting Plaintiff to immediately conduct written discovery and depositions prior to the hearing on Plaintiff's Motion.

Plaintiff is seeking emergency relief because of the irreparable harm that will ensue upon the consummation of the agreement between Defendants Stephens Media LLC, Stephens Holding Company of Arkansas, SF Holding Corp., DR Partners, Stephens Media Intellectual Property, LLC, Michael Ferguson, and Warren A. Stephens (collectively "the Stephens Media Defendants"

or "Stephens Media") and the Las Vegas Sun Inc. Less than four days after this Court denied the Plaintiffs' motion for a preliminary injunction, the Defendants signed a definitive Letter of Intent expressing their avowed intention to terminate the 2005 JOA. *See* September 10, 2013 Letter of Intent, attached hereto as **Exhibit 1**. This definitive expression of the Defendants' intent, in writing, is a significant "threat" that the Defendants "may" do what they have expressed their intent is to do. This "threat" must be stopped at its "incepiency."

Pursuant to the terms of the Letter of Intent executed on September 10, 2013, the final agreement between the parties is to be executed by no later than September 30, 2013. *See* Letter of Intent, Ex. 1, at § 5 ("Unless terminated earlier by written agreement of the parties, this Letter of Intent shall terminate in the event that the Transaction Documents have not been executed and delivered by the parties on or before September 30, 2013."). Accordingly, if this Motion is not ruled upon immediately, the Defendants will be able to put the Las Vegas Sun out of business and create a monopoly in the Las Vegas newspaper market. Closure of the Las Vegas Sun will result in irreparable harm that cannot be remedied with monetary damages.

This Motion is made and based upon FRCP 65, Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 7 of the Clayton Act, 15 U.S.C. § 18, Section 16 of the Clayton Act, 15 U.S.C. § 26 and Nevada's Unfair Practice Act, NRS Chapter 598A, *et seq.* This Motion is supported by the accompanying memorandum of points and authorities, the Verified Complaint (Dkt #1), Plaintiffs' Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, and to Establish a Hearing and Briefing Schedule (Dkt. #2), and Plaintiffs' Reply in Support of Emergency Motion for Preliminary Injunction (Dkt. #20) on file herein, the declaration of Joseph M. Alioto filed contemporaneously herewith, all other pleadings and papers on file, and any oral argument this Court wishes to entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **STATEMENT OF FACTS**[1]

On September 6, 2013, a hearing was held before this Court on Plaintiffs' Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, and to Establish a

---

[1] For a complete recitation of the facts, see Plaintiffs' Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, and to Establish a Hearing and Briefing Schedule (Dkt. #2).

Hearing and Briefing Schedule (Dkt. #2). The Court denied the request for a preliminary injunction on the basis that "Plaintiffs' complaint that the termination of the Joint Operating agreement will violate antitrust laws is premature and not ripe." September 13, 2013 Order Denying Plaintiffs' Emergency Motion for Preliminary Injunction ("Order") (Dkt. #34).

Just four days after the hearing, on or about September 10, 2013, Defendants Stephens Media LLC and Stephens Medial Intellectual Property LLC ("SMIP") entered into a Letter of Intent with and Greenspun Media Group, LLC, Las Vegas Sun, Inc. and Greenspun Corporation. *See* Letter of Intent, Ex. 1. Pursuant to the terms of the Letter of Intent, the parties agreed to the following transaction structure:

> On the date of Closing, SMIP and Stephens Media shall assign the License Agreement to Las Vegas Sun, Inc., or its assigns, and SMIP and Stephens Media shall convey all right, title and interest in and to the URL to Las Vegas Sun, Inc., or its assigns, free and clear of liens, claims and encumbrances, for $10 and other good and valuable consideration from the parties thereto. On the date of Closing, Las Vegas Sun, Inc. and Stephens Medial shall terminate the JOA Agreement for $10 and other good and valuable consideration by Stephens Media. Stephens Media shall pay Brian Greenspun, Daniel Greenspun, Janie Greenspun Gale and Susan Greenspun $70,000 each ("Closing Price") on the date of Closing. Both transactions shall occur simultaneously and are mutually exclusive.

Letter of Intent, Ex.1, at § 1.

Based upon the unlawful actions of the Defendants, Plaintiff has been forced to file the instant Motion seeking injunctive relief preventing the Defendants from effectuating their plan of unlawfully putting the Las Vegas Sun out of business in violation of the Newspaper Preservation Act of 1970, the Sherman Act, the Clayton Act, and Nevada's Unfair Trade Practices Act.

## II.   ARGUMENT

### A. Plaintiff's Claims are Ripe for Adjudication

In this Court's Order, the Court found that

> there is no definitive contract or agreement that presently exists between Defendants and Las Vegas Sun, Inc. and/or the Greenspun Media Group terminating the Joint Operating Agreement under which the Las Vegas Review-Journal and Las Vegas Sun newspapers are published. Accordingly, Plaintiff's complain that the termination of the Joint Operating Agreement will violate antitrust laws is premature and not ripe."

Order (Dkt. #34) at p. 2. However, a definitive agreement is not required, and any such requirement goes against the plain language of the antitrust statutes and long-standing case law interpreting the same.

Plaintiff's claims are permitted in order to prevent threatened harm and Plaintiff need not wait until the damage he seeks to prevent comes to fruition. Section 16 of the Clayton Act states, in relevant part, that:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against *threatened* loss or damage by a violation of the antitrust laws

15 U.S.C. § 26 (emphasis added). Injunctive relief under Section 16 is a remedy that is "characteristically available even though the plaintiff has not yet suffered actual injury." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (internal citation omitted). Moreover, a claim for injunctive relief under Section 16 is available and ripe whenever there exists "a significant threat of injury from an *impending* violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Id.* (emphasis added).

Similarly, Section 7 of the Clayton Act states, in relevant part, that

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition *may* be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18. The thrust of Section 7 is prospective, designed "primarily to arrest apprehended consequences of inter-corporate relationships before those relationships could work their evil...." *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 597 (1957) (emphasis added); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 317, 323 (1962)(intent of Section 7 was to "arrest[] mergers at a time when the trend to a lessening of competition in a line of commerce was still in its incipiency," and "Congress used the words 'may be substantially to lessen competition'. . ., to indicate that its concern was with probabilities, not certainties."); *United States v. Von's*

*Grocery Co.*, 384 U.S. 270, 277 (1966) (quoting Section 7 and noting that "[b]y using these terms in [Section] 7 which look not merely to the actual present effect of a merger but instead to its effect upon future competition, Congress sought to preserve competition among many small businesses by arresting a trend toward concentration in its incipiency before that trend developed to the point that a market was left in the grip of a few big companies."); *see also* U. S. v. *Pabst Brewing Co.*, 384 U.S. 546, 552, (1966) ("Congress, in passing [Section] 7 and in amending it with the Celler-Kefauver Anti-Merger amendment, was concerned with arresting concentration in the American economy, whatever its cause, in its incipiency. To put a halt to what it considered to be a 'rising tide' of concentration in American business, Congress, with full power to do so, decided to clamp down with vigor on mergers.") (internal citation and quotation omitted); *United States v. Aluminum Co. of America*, 377 U.S. 271 (1964)(quoting *Brown Shoe*); *United States v. Continental Can Co.*, 378 U.S. 441, 465 (1964) ("the purpose of [Section] 7 [is] to arrest anticompetitive arrangements in their incipiency.").

That there is no requirement that parties enter into a "signed-and-sealed contract or written resolution" prior to courts enforcing the antitrust laws was recognized in *Esco Corp. v. United States*, 340 F.2d 1000 (9th Cir. 1965). The Court noted that even a "wink" amongst competitors may be sufficient to establish an unlawful conspiracy as "[a] knowing wink can mean more than words." *Id.* at 1007. Defendants' intent to terminate the 2005 JOA and entry into an agreement with the Las Vegas Sun, Inc. to do so cannot be denied or ignored. We now have a fully executed and signed Letter of Intent, executed mere days after the hearing held by this Court. The Defendants' intention of terminating the 2005 JOA is clearly manifested in both this Letter of Intent and their actions prior to the execution of the Letter of Intent. Defendants' attempt to disguise this clear intent by including Section 6 in the Letter of Intent must be recognized for what it is – an artificial effort designed to improperly forestall the determination of Plaintiff's claims.

In fact, Section 6 is contradicted by the very next section of the Letter of Intent. In Section 7, the Letter of Intent states that "[t]his Letter of Intent may be amended and the terms hereof waived only by a written agreement signed by each of the parties hereto." Letter of Intent, Ex.1, at

§ 7. In other words, even if the Las Vegas Sun, Inc. decided not to proceed with the termination of the 2005 JOA, it could not unilaterally choose to do so.

In any event, that there is a mere possibility that the parties can amend or alter the terms of the Letter of Intent is insufficient to defeat ripeness and take the transaction out of the purview of antitrust law. For example, in *Northern Pacific Railway Company v. Unites States*, 356 U.S. 1 (1958), the railway entered into numerous contracts with property owners abutting the railway. These contracts each contained a preferential routing clause requiring the landowners to utilize the defendant railway for the transportation of their goods. The defendant railway argued that there could not have been any antitrust violation because the clauses at issue "are subject to so many exceptions and have been administered so leniently that they do not significantly restrain competition." *Id.* at 521. The Court rejected this argument and noted: "if these restrictive provisions are merely harmless sieves with no tendency to restrain competition, as the defendant's argument seems to imply, it is hard to understand why it has expended so much effort in obtaining them in vast numbers and upholding their validity." *Id.*

Here, Defendants have expended significant effort. For months, Defendants have negotiated with the Las Vegas Sun, Inc., Greenspun Media Group, Greenspun Corporation, and Vegas.com LLC in furtherance of accomplishing their goal of terminating the 2005 JOA. The parties have agreed on the relevant terms for termination of the 2005 JOA, including the consideration to be paid. That there may be some insignificant changes made to the terms contained in the Letter of Intent, and that the final termination may be subject to certain contingencies, does not negate the Defendants' clear intent to terminate the 2005 JOA. Thus, the presence of the illusory language in Section 6 is ineffective at further delaying adjudication of Plaintiff's claims, which are presently ripe for adjudication.

Finally, the fact that the Department of Justice will have to ultimately approve the termination of the JOA is not a contingency effecting the ripeness of Plaintiff's claims and request for injunctive relief. Nothing in either the Sherman or Clayton Acts indicates that Plaintiff's relief is contingent on the concurrence of state or Federal law enforcement authorities. Additionally, the private right of enforcement afforded by Section 16 of the Clayton Act cannot be denied simply

3756179.1

because there may potentially be other governmental oversight regarding the termination of the 2005 JOA. While not expected to occur here[2], *Reilly v. Hearst Corp.*, 107 F.Supp.2d 1192, 1194-95 (N.D. Cal. 2000), provides an important warning that such oversight does not always protect the rights of enforcement expressly granted to private parties under the Clayton Act. In that case, the Court criticized the Department of Justice's lack of impartiality in its investigation:

> The court is deeply troubled by DOJ's role in this case. . . . The undersigned is astonished and disappointed that DOJ would allow itself to be put in a position where the inference can be so easily drawn that its action or inaction in this case was political favoritism masquerading as law enforcement.

*Reilly v. Hearst Corp.*, 107 F. Supp. 2d 1192, 1211 (N.D. Cal. 2000). Accordingly, any oversight by the Department of Justice cannot, and should not, serve as a substitute for Plaintiff's private right of action before this Court.

### B. Intent Behind the Termination of the JOA is to Lessen Competition and Create a Monopoly

Defendants are attempting to create a monopoly by essentially purchasing the Las Vegas Sun, Inc.'s interest in the 2005 JOA. Section 7 of the Letter of Intent states, in relevant part, that the transactions are not intended to create any restrictions on the use of lasvegassun.com, that the Letter of Intent "does not contemplate the prevention or restriction by any of the parties . . . from competing with one another," and the Letter of Intent does not include "the closure of or cessation of business of Las Vegas Sun, Inc., the Las Vegas Sun or its website 'lasvegassun.com.'" Letter of Intent at § 7. However, this is precisely what the termination of the 2005 JOA is intended to do. In exchange for the termination of the 2005 JOA, Defendants are walking away from an annual net revenue of $1.2 Million. Under the 2005 JOA, Stephens Media presently pays to the Las Vegas Sun, Inc. approximately $1.3 Million per year, whereas it receives from Vegas.com a guaranteed payment of $2.5 Million per year. There is no legitimate business explanation for the Defendants' forfeiture of this money. Rather, Defendants are willing to forego this net revenue in order to cripple their competition and create a monopoly on the newspaper market in Las Vegas.

---

[2] Plaintiff recognizes that there has been a change in the leadership of the antitrust division of the Department of Justice, and does not anticipate the type of impartiality exhibited in *Reilly*. However, the circumstances of *Reilly* illustrate the importance of permitting a person to proceed with their private right of action.

1  This will allow Defendants the unfettered ability to increase prices without restriction and engage
2  in other business practices that the antitrust laws are designed to prevent.
3        Termination of the 2005 JOA will effectively destroy the Las Vegas Sun and its website by
4  leaving it with no infrastructure or facilities within which to produce, print, edit or operate its
5  newspaper or website. As to the viability of the lasvegassun.com website, newspaper websites are
6  not profitable by themselves, and instead require the use of revenues generated by their printed
7  counterparts. The Las Vegas Sun, Inc. will receive just $10 as monetary consideration for the
8  termination. The Las Vegas Sun, Inc.'s sole remaining asset will be its masthead. The Las Vegas
9  Sun, Inc. will not be entitled to any other assets belonging to the 2005 JOA, including, but not
10 limited to, rights to subscription revenues, advertising revenues, and the infrastructure necessary
11 for circulation and publication. Without the printing press and other infrastructure currently
12 utilized under the 2005 JOA, the Las Vegas Sun will be unable to produce or circulate its
13 newspaper either in print or online, and Defendants will have accomplished their intended
14 monopoly over the newspaper market in Las Vegas. Thus, despite the self-serving statement in
15 the Letter of Intent to the contrary, the intended consequences of the termination of the 2005 JOA
16 include "the closure of or cessation of business of Las Vegas Sun, Inc., the Las Vegas Sun [and]
17 its website 'lasvegassun.com.'"

### C. Good Cause Exists for Permitting Expedited Discovery

Rule 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FRCP 26(d). Courts in the Ninth Circuit apply a "good cause" test in deciding whether to permit expedited discovery before the Rule 26(f) conference. *See, e.g., Bleiberg Entm't, LLC v. John & Jane Does 1-47*, CV-13-00595-PHX-GMS, 2013 WL 3786641 (D. Ariz. July 19, 2013); *Liberty Media Holdings, LLC v. Letyagin*, 2:12-CV-00923-LRH, 2012 WL 3135671 (D. Nev. Aug. 1, 2012); *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW (PVT), 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). The decision to grant expedited discovery rests in the sound discretion

of the Court, and typically is granted "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. Courts also consider whether expedited discovery would conserve party and court resources and expedite litigation. *Id.*

The good cause standard may be satisfied when, as in this case, the party is seeking a preliminary injunction. *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844 (D. D.C. 1996)(internal citations omitted)("[E]xpedited discovery is particularly appropriate where a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."); *see also Onan Corp. v. United States*, 476 F.Supp. 428, 434 (D. Minn. 1979)(permitting early discovery "to prepare for a possible preliminary injunction motion."). Expedited discovery has been ordered where it would "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing. *Edudata Corp. v. Scientific Computers, Inc.*, 599 F.Supp. 1084, 1088 (D. Minn. 1984), aff'd. in part, rev'd in part on other grounds, 746 F.2d 429 (8th Cir. 1984); *Ellsworth Assocs.*, 917 F.Supp. at 844 (ordering expedited discovery where it would "expedite resolution of [plaintiffs'] claims for injunctive relief").

Here, good cause exists to permit Plaintiff to conduct expedited discovery, including but not limited to, deposing Michael Ferguson and Warren Stephens, and serving written interrogatories and requests for production of documents upon all of the Defendants. Such expedited discovery is essential to ascertaining the full efforts taken by Defendants to effectuate their intent to terminate the 2005 JOA, as well as to determining Defendants' true purpose and intent behind the termination. Thus, this discovery will assist in expediting the resolution of the Plaintiff's claims as well as enable this Court to fully adjudicate Plaintiff's likelihood of success on the merits.

### III.    CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' <u>Emergency</u> Motion for Temporary Restraining Order and for Preliminary Injunction, and to Establish a Hearing and Briefing Schedule (Dkt #2), and Plaintiffs' Reply in Support of <u>Emergency</u> Motion for Preliminary Injunction (Dkt. #20), Plaintiff respectfully requests that the Court enter a Temporary

1  Restraining Order and, thereafter, a Preliminary Injunction.  Plaintiff further requests that this
2  Court set a hearing on Plaintiff's motion for preliminary injunction and deadlines for the filing of
3  Defendants' opposition to Plaintiff's motion for preliminary injunction and Plaintiff's reply
4  thereto.  Finally, Plaintiff requests that the Court enter an order permitting Plaintiff to conduct
5  expedited discovery.

Dated this 19th day of September, 2013.

LEWIS ROCA ROTHGERBER LLP

BY: /s/ Tara C. Zimmerman
E. LEIF REID
DARREN J. LEMIEUX
TARA C. ZIMMERMAN
50 West Liberty Street, Suite 410
Reno, Nevada  89501

JOSEPH M. ALIOTO
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to 5(b), I certify that I am an employee of Lewis Roca Rothgerber LLP and that on the 19th day of September, 2013, service of the **PLAINTIFF BRIAN L. GREENSPUN'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION, TO ESTABLISH A HEARING AND BRIEFING SCHEDULE, AND TO PERMIT EXPEDITED DISCOVERY** upon Defendants was made by depositing a copy for mailing, first class mail, postage prepaid, at Reno, Nevada to the following:

Donald J. Campbell
J. Colby Williams
Campbell & Williams
700 South Seventh Street
Las Vegas, Nevada 89101

Gordon L. Lang
Nixon Peabody, LLP
401 North Street NW, Suite 900
Washington, D.C. 20004

DATED this 19th day of September, 2013.

*Carole Davis*
An Employee of Lewis Roca Rothgerber LLP

# EXHIBIT 1

# EXHIBIT 1



**Michael Ferguson**
**Chief Executive Officer**

1111 W. Bonanza Road (89106)
P.O. Box 70
Las Vegas, NV 89125-0070
(702) 477-3829 • Fax (702) 383-0402
fergy@stephensmedia.com

September 10, 2013

Mr. Paul Hamilton
Chief Executive Officer
Greenspun Media Group
2630 Corporate Circle
Henderson, NV 89074

## Letter of Intent

Dear Paul:

This non-binding letter, except as set forth below, ("Letter of Intent") is entered into to confirm the general understanding between Stephens Media LLC ("Stephens Media"), as successor-in-interest to DR Partners, and Greenspun Media Group ("Greenspun Media").

Stephens Media and Las Vegas Sun, Inc. are parties to an Amended and Restated Joint Operating Agreement dated June 10, 2005, concerning the publication of the Las Vegas Review-Journal and Las Vegas Sun ("JOA Agreement").

Stephens Media Intellectual Property LLC ("SMIP") and others are parties to a License Agreement dated June 10, 2005 ("License Agreement") with respect to the Stephens Domain and Stephens Marks described therein (collectively, the "URL").

Subject to all of the provisions hereof and to the negotiation, execution and delivery of mutually acceptable definitive documents, all as more particularly described in this Letter of Intent, Stephens Media, Greenspun Media, SMIP, and Las Vegas Sun, Inc. have preliminarily agreed upon the following general terms and conditions:

1. **Transaction Structure.** On the date of Closing, SMIP and Stephens Media shall assign the License Agreement to Las Vegas Sun, Inc., or its assigns, and SMIP and Stephens Media shall convey all right, title and interest in and to the URL to Las Vegas Sun, Inc., or its assigns, free and clear of liens, claims and encumbrances, for $10 and other good and valuable consideration from the parties thereto. On the date of Closing, Las Vegas Sun, Inc. and Stephens Media shall terminate the JOA Agreement for $10 and other good and valuable consideration by Stephens Media. Stephens Media shall pay Brian Greenspun, Daniel Greenspun, Janie Greenspun Gale and Susan Greenspun $70,000 each ("Closing Price") on the date of Closing. Both transactions shall occur simultaneously and are mutually exclusive.

2.  Closing. The parties will negotiate with the intent of reaching mutually agreed upon definitive documents (collectively, the "Transaction Documents"), and providing for a closing of the transactions contemplated thereby (the "Transactions"), including payment of the Closing Price not later than December 31, 2013 ("Closing"). The Transaction Documents shall include mutual hold harmless and release of liability provisions by Stephens Media, Greenspun Media, SMIP, and Las Vegas Sun, Inc. As an express condition to the closing of the transactions contemplated hereunder, Stephens Media and SMIP shall receive as of the Closing a consent to the assignment of the License Agreement, which shall include mutual hold harmless and release of liability provisions, from Vegas.com, LLC.

3.  Department of Justice. The parties will give any public notice to the United States Department of Justice ("DoJ") that may be required by applicable law, in addition to complying, at all times, with all applicable laws related to the parties and the Transaction. Prior to and after any such public notice, the parties may disclose the Transactions to the DoJ for its review, but will request confidentiality for any non-public information or material. The parties shall cooperate with one another at all times related to same and shall keep each other fully informed with respect to all communications with the DoJ except for any communications involving financials or other nonpublic proprietary information.

4.  Confidentiality. This Letter of Intent and the Transactions involving Stephens Media, Greenspun Media, SMIP, and Las Vegas Sun, Inc. are confidential. No party will issue any press release or make any other public announcement concerning this Letter of Intent or the proposed Transactions without the consent of the other, except as contemplated by Section 3, as may be necessary or desirable in any legal proceeding, or as may otherwise be required by law. Notwithstanding anything herein to the contrary, no party to this Letter of Intent is responsible for any disclosure by Brian Greenspun or any representative of Brian Greenspun, whether purported to be made as an individual or as an officer or director of a party or in any other capacity.

5.  Termination. Unless terminated earlier by written agreement of the parties, this Letter of Intent shall terminate in the event that the Transaction Documents have not been executed and delivered by the parties on or before September 30, 2013.

6.  Non-Binding Agreement. This Letter of Intent is only a statement of intent and, except as set forth in Sections 3, 4, 5, 7, and this Section 6 hereof (which Sections are intended to be binding), does not constitute the contractual commitment of any party hereto and should not be relied upon by another party. Each party's obligation to proceed with the Transactions contemplated hereby is subject to, inter alia, the execution and delivery of the Transaction Documents, in form and substance satisfactory to each party in their sole and absolute discretion; and legal and other due diligence satisfactory to each party in their sole and absolute discretion. The purpose of this Letter of Intent is to set forth our preliminary mutual understandings regarding the Transactions. This Letter of Intent contemplates negotiation and execution of the Transaction Documents and it is intended that all legal rights and obligations other than those contained in the binding provisions will arise only upon execution and pursuant to the terms and conditions of definitive Transaction Documents.

7. **Miscellaneous.** Each party will be responsible for its own expenses in connection with all matters relating to this Letter of Intent and the Transactions, except as expressly provided otherwise in the Transaction Agreements. If the Transaction Agreements are not entered into for any reason, neither party will be responsible for any of the other party's expenses.

This Letter of Intent and the legal relations between the parties hereto arising under this Letter of Intent will be governed by and construed in accordance with the laws of the State of Nevada including all matters of construction, validity and performance, and nothing contained herein shall waive, release or otherwise effect the JOA Agreement or the License Agreement until such time as the parties have executed and delivered the Transaction Documents to one another.

The JOA Agreement (i) does not cover the lasvegassun.com URL, (ii) there are no restrictions or limitations on how Las Vegas Sun, Inc. now uses the lasvegassun.com URL for its publication, the *Las Vegas Sun*, and (iii) the Transactions are not intended to create any such restrictions. This Letter of Intent does not contemplate the prevention or restriction by any of the parties or their officers, directors, manager, members or shareholders from competing with one another, and this Letter of Intent shall not include any transfer of any asset, url, or mark owned by Las Vegas Sun, Inc. including, but not limited to, the url "lasvegassun.com", its newspaper publication(s), its periodical(s), or the closure or cessation of business of Las Vegas Sun, Inc., the Las Vegas Sun, or its website "lasvegassun.com."

This Letter of Intent supersedes any prior or contemporaneous agreements and understandings of the parties with respect to the subject matter covered in this Letter of Intent. This Letter of Intent may be signed in counterparts (including by facsimile signature), each of which will be considered an original, but all of which taken together will constitute one and the same instrument. In no event may either party assign any rights or obligations hereunder without the prior written consent of the other party, and any purported assignment without such consent shall be null and void. This Letter of Intent may be amended and the terms hereof waived only by a written agreement signed by each of the parties hereto.

If the foregoing is consistent with your understanding, please indicate your approval and acceptance of this Letter of Intent by signing a copy in the space provided below and delivering the same to the undersigned.

STEPHENS MEDIA LLC
STEPHENS MEDIA INTELLECTUAL PROPERTY LLC

By: _____
Name: Michael Ferguson

LAS VEGAS SUN, INC.

By: _____
Paul Hamilton, President

GREENSPUN MEDIA GROUP, LLC

By: THE GREENSPUN CORPORATION, its Manager

By: _____
Paul Hamilton, President